CENTRAL EXPLORATION CO., INC., et al. *v.* GRAY, et ux.

Feb. 1, 1954

No. 38980 51 Adv. S. 6 70 So. 2d 33

*Melvin, Melvin & Melvin,* Laurel, for appellants.

*Collins & Collins,* Laurel, for appellees.

McGEHEE, C. J.

This is a suit wherein the plaintiffs, John Gray and Wife, recovered a judgment for the sum of $1,800 as damages to their rock-veneer dwelling house caused by an explosion of dynamite at a depth of about eighty feet below the surface of the earth and at a distance of from 275 to 450 feet therefrom, and which building is alleged to have been severely damaged by the vibrations and concussion of the soil against the same from the point of the explosion. The suit is against the appellants, Central Exploration Co., Inc., and Tweed Everett Failing, doing business as Failing Exploration and Drilling Company. The defendants contended that the explosion conducted by them in connection with the use of a seismograph machine in exploring for oil and gas was at a distance of 445 feet from the residence of the plaintiffs, whereas the testimony on behalf of the plaintiffs discloses that the explosion was conducted at approximately 275 to 300 feet from their residence property.

It is conceded that the defendants did not explode the dynamite on the plaintiffs' land, but exploded it on adjoining land, with the permission of the owner. The declaration does not allege negligence on the part of the defendants but is predicated upon the theory of absolute liability of one using such a highly dangerous explosive near the property of another in such manner as to cause damage thereto, even though the operation may have been carefully conducted according to the usual, modern and approved methods of conducting the explosions and with reasonable care; that is to say, that the defendants acted at their peril on the occasion complained of.

There was testimony by Mrs. Gray that she and her brother, Dr. G. A. Bynum, and Dr. Bynum's wife, were seated at the dining table in the plaintiffs' home and were eating their lunch at the time the explosion occurred; that the defendants exploded three separate charges of dynamite about three minutes apart, and that the explosions were so terrific that they shook the whole house, and to such an extent that those at the table ran out of the house for fear that it might fall. That the shaking of the house and the great damage thereto occurred simultaneously with the three explosions. Mrs. Gray's testimony with reference to the severity of the explosions was corroborated by her brother, Dr. G. A. Bynum, and a neighbor, and she was corroborated as to the extent of damages by her husband, plaintiff John Gray, who testified in detail in regard thereto. A building contractor estimated the damage to the plaintiff's house at $2,750, but said that if the foundation thereof was damaged the same in his opinion would have to be entirely reconstructed.

The defendants did not undertake to disprove that the house had been damaged to the extent testified to by the plaintiffs and their witnesses but they introduced the testimony of expert witnesses who testified in re-

sponse to hypothetical questions, which assumed that the explosion occurred at a distance of from 200 to 450 feet from the residence and at a depth of 80 feet underneath the ground, and further assumed that only 10 pounds of dynamite was used, the explosions would not have had any effect on, or cause any damage to, the residence of the plaintiffs. But since the jury had a right to believe the testimony on behalf of the plaintiffs that their dwelling house was greatly shaken, cracked or severely damaged simultaneously with the three explosions, and that if the explosion of ten pounds of dynamite would not produce such a result, then it would follow as a reasonable inference that more than ten pounds may have been used.

It was clearly a question for the jury as to whether or not the damage to the residence of the plaintiffs was a proximate result of the explosions. Moreover, the experts conceded that the nature and character of the soil between the point of explosion and the place on which the house was located would determine whether or not the explosion would have damaged the house, assuming that the explosion occurred at the stated distance away from the same, and the jury was warranted in believing the testimony on behalf of the plaintiffs that the explosion occurred only 275 to 300 feet from the house. No proof was offered as to the nature and character of the soil between the point of explosion and the location of the house, and of course the plaintiffs would not likely have been able to make such proof as to the soil between the point of explosion, a depth of eighty feet, to a point underneath their house, or as to how much dynamite may have been used.

Since the defendants contended that only ten pounds of dynamite was used and that the explosion of that amount would have no effect on the house if the explosion occurred at a distance of 200 to 450 feet therefrom, then if the jury believed that the explosion did

in fact shake and damage the house, it was a question for the consideration of the jury as to whether a greater quantity of dynamite was used in the explosion. The verdict of the jury in favor of the plaintiffs, when based on the foregoing testimony, has left only one issue to be determined by us on this appeal, and that is whether or not under the finding of the jury the defendants would be liable without regard to whether or not they may have used due care to conduct the explosions according to the usual, customary and approved methods of conducting such an exploration for oil and gas.

The appellants rely on and quote at great length an article in 33 Harvard Law Review 542, 550, entitled "Liability for Damage to Land by Blasting"; and on the cases of Geo. J. Reynolds, et al. v. W. H. Hinman Company, 75 A. 2d 802 (Me.), and other decisions of the Supreme Court of Maine and from elsewhere therein cited; Ball v. Nye, 99 Mass. 582; Wilson v. City of New Bedford, 108 Mass. 261; Losee v Buckanan, 51 N. Y., 476, reviewed in that case; Simon v. Henry, 62 N. J. Law 486; Mrs. Julia Williams v. Codell Construction Co., 253 Ky., 166, 69 S. W. 2d 20; T. H. Gibson, et al. v. W. A. Womack, 218 Ky. 626, 291 S. W. 1021; Brooks-Calloway Company v. Carroll, 29 S. W. 2d 592 (Ky.); Whitmore v. Fago, 93 N. Y. Sup. (2d Series) 672, citing several former New York decisions; Dolham v. Peterson, 9 N. E. 2d 406, 297 Mass. 479; Del Pizzo v. Middle West Construction Co., 22 A. 2d 79, 147 Pa. Superior 345; Bessemer Coal, Iron and Land Company v. Doak, 44 So. 627 (Ala.); Birmingham Ore & Mining Company v. Grover, 43 So. 682, (Ala.); Le Bleu v. Shell Petroleum Co., 161 So. 214, (La.); and numerous other cases which reject the doctrine of absolute liability and hold that negligence or fault is a requisite to liability, where blasting is done on the land of the defendant sought to be charged, or on other land with the consent of the owner thereof.

Some of these authorities above enumerated hold specifically that if blasting is done by one on his own land, or on the land of another with his consent, and in accordance with the modern and approved methods of conducting such an operation, he is not liable to an adjoining or nearby landowner for any damages that may be caused the latter by such blasting; that for any injury resulting from the mere concussion of the soil or vibrations from the explosion, there is no liability unless it is shown that the work was done negligently and that the injury was the proximate result of negligence, instead of being the result of blasting according to the usual and approved methods and with reasonable care. It is expressly recognized by many of those decisions and seems to be the general rule that if one, while blasting with dynamite or other explosives, should throw rocks, debris and boulders onto the land of an adjoining owner, he is liable for damages caused to the property or the person of the adjoining owner, without regard to negligence or fault as to the manner in which he conducts the blasting operation. But most of the cases relied upon by the appellants are clearly in point in holding that if the explosion should shake and greatly damage the property of the adjoining owner through vibrations and concussion of the soil, there would be no liability on account thereof; that the damages are only consequential, and are not the result of any physical invasion of the plaintiff's premises such as would constitute a trespass thereon.

In other words, under these decisions if a blast caused by the explosion of dynamite should throw a boulder or other large stone or rock or other object on the house of an adjoining landowner, knock down his chimney, break his glass in the windows, or otherwise damage his residence, or his person, there would be absolute liability for damages without regard to negligence or fault on the part of the defendant, whereas if, instead of throwing

a boulder, etc. through the air, the same blast should have caused vibrations and concussions of the earth so as to cause his chimney to tumble down, the windows in his house to become shattered, the walls and foundation to be out of alignment, and to inflict a personal and permanent injury upon the owner by the falling of the chimney to the house, there would be liability in the first instance for the damage done by the boulder or other large stone or rock being thrown on the house but no recovery could be had in the second instance for the other damages caused by the vibrations and concussion, although they were caused by the force of the same blasting operations.

Numerous courts have rejected the view contended for by appellants as being illogical and unsound, and have held that there is no basis for the rule of liability in the first instance and a denial thereof in the second.

The Courts of Ohio, Illinois, California, Indiana, Rhode Island, Missouri, Nebraska and a number of other states, including the U. S. Circuit Court of Appeals for the Second Circuit in the case of Exner v. Sherman Power Construction Co., 54 F. 2d 510, 80 A. L. R. 686, have followed the doctrine of absolute liability announced in the English case of Rylands v. Fletcher, 1 Exch. 265, approved by the House of Lords, to the effect that one who so uses or stores dynamite or other dangerous explosives as to cause likelihood of risk to others is absolutely liable, irrespective of negligence, if damage to the person or property of an adjacent owner results, whether from direct impact of rock thrown out by the explosion or from vibrations or concussions of the earth, and whether the dynamite explodes when stored or employed in blasting. Whereas, the Courts of New York, Massachusetts, New Jersey, Kentucky and Alabama, and perhaps a few other states, all recognize the rule that in the so-called "blasting" cases an absolute liability, without regard to fault, has uniformly been imposed by the American courts wherever there has been an actual

invasion of property by rocks or debris, but these courts have clearly established the rule in their jurisdictions that if a blasting operation by the use of dynamite or other dangerous explosives is conducted on the land of an adjoining owner with his consent and the property of his neighbor is damaged by the vibrations or concussions of the earth due to the explosion, there is no liability if the operation is conducted according to the modern and approved methods and with reasonable care. The two contrary holdings are recognized in 38 Am. Jur. 799, 800, 801, Pars. 139-140.

It is pointed out by some of the courts that the distinction between the two lines of decisions is based on the historical differences between the actions of trespass and case, the earlier forms of action, such as trespass, and trespass quare clausum fregit, having allowed recovery for a direct invasion of another's property without regard to fault, which was not true after the later action on the case arose under the development of the law of negligence.

We are of the opinion that the Sixth Circuit was correct in the Exner case, supra, when it said that ''In every practical sense there can be no difference between a blasting which projects rocks in such a way as to injure persons or property and a blasting which, by creating a sudden vacuum, shatters buildings or knocks down people. In each case, a force is applied by means of an element likely to do serious damage if it explodes. The distinction is based on historical differences between the action of trespass and case and, in our opinion, is without logical basis.'' We also agree with that Court that: ''When, as here, the defendant, though without fault has engaged in the perilous activity of storing large quantities of a dangerous explosive for use in his business, we think there is no justification for relieving it of liability, and that the owner of the business, rather than a third person who

has no relation to the explosion, other than that of injury, should bear the loss. The blasting cases seem to afford ample analogies and to justify this conclusion.''

In the case of Wendt v. Yant Construction Company, 125 Neb. 277, 249 N. W. 599, the Court followed the holding in the Exner case, supra, and quoted therefrom the statement that ''The imposition of absolute liability is not out of accord with any general principles of law,'' and said further that ''The weight of authority sustains the position that there is no distinction in liability for damage to property from blasting which projects rocks or by concussion * * *.''

We are unable to say that the statement last above quoted is correct as to where the weight of authority may lie at the present time, but we are unwilling to follow any other rule than that announced by the courts of the states hereinbefore first enumerated, and especially in view of the fact that we have no precedent decision of our own Court which decides the precise question here presented. In addition to the Exner and Wendt cases, hereinbefore discussed, the cases of Colton v. Onderdonk, 69 Cal. 155, 10 P. 395, 58 Am. Rep. 556; Louden v. Cincinnati, 90 Ohio State 144, 106 N. E. 970, L. R. A. 1915E, 356, Ann. Cas. 1916C, 1171; and Hickey v. McCabe, 30 R. I. 346, 75 Atl. 404, 27 L. R. A. (N. S.) 425, 19 Ann. Cas. 783, are particularly in point. The reasoning of these cases is more satisfactory to us than that of the cases relied on by the appellants.

The former decisions of this Court that are cited by the appellants all involved actions based upon negligence either under the law of master and servant or deal with the high degree of care owing to third persons required of one using or storing explosives, and are therefore not decisive of the issue here involved.

 The appellants have assigned seventeen grounds of alleged error on the part of the trial court, nine of

which may be appropriately grouped under Point 1 and the remainder under Point 2. And the second point for our consideration is whether or not the trial court committed reversible error in sustaining an objection to the proof offered by the appellants in an attempt to show that they had the consent of an assignee of an oil and gas lease of the plaintiffs' land to explore for oil and gas thereon.

The first answer to this contention is that the damage here complained of did not result from an explosion on the land of the plaintiffs; and the second is that the jury was entitled to infer from the proof in the case that the explosion was set off too near the residence of the plaintiffs, and that too large a charge of dynamite was used in conducting an explosion that near the residence, without regard to whether it took place on adjoining land or on the land of the plaintiffs. In either instance, under the rule of liability that we prefer to follow, the defendants would have acted at their peril.

After careful consideration of all of the assignments of error, which we have grouped under Points 1 and 2, we are of the opinion that the case was submitted to the jury on the correct issue that the verdict is amply supported by the testimony and that no reversible error was committed on the trial. The judgment appealed from must therefore be affirmed.

Affirmed.

All justices concur except *Gillespie, J.*, who took no part.